**Joseph & Norinsberg LLC**
Fighting for Employee Justice

Manhattan Office
110 East 59th Street, Suite 3200
New York, New York 10022

Queens Office
69-06 Grand Avenue, 3rd Floor
Maspeth, New York 11378

Boston Office
225 Franklin Street, 26th Floor
Boston, Massachusetts 02110

Michael R. Minkoff, Esq.
michael@employeejustice.com

August 25, 2023

*Via ECF Only*
The Honorable Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza
Brooklyn, New York 11201

      Re:    ***Ramales, et al. v. Signature Cleaning Services, Inc., et al.***
               **1:22-cv-02863-LDH-CLP**

Dear Judge Pollak:

      We represent the Plaintiffs in the above-referenced action against Signature Cleaning Inc., Andrew Weisbach, individually, and American Maintenance 3 Janitorial Services and Supplies Co. Corp ("American") (collectively, "Defendants") ("Defendants," together with Plaintiffs, as "the Parties"), arising under, *inter alia*, the overtime provisions of the Fair Labor Standards Act ("FLSA") (collectively the "Claims"). The Parties have reached a settlement in principle, which they have now reduced to a formal written agreement ("Agreement"), attached hereto as **Exhibit A**. We write now, jointly on behalf of all Parties, to explain the terms of the Parties' settlement with respect to Plaintiffs' FLSA claims, and to seek approval of the settlement pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015).[1]

---

[1] As described in greater detail below, following the Court's August 7, 2023 Order, the Parties have bifurcated their settlement agreement: one containing a resolution of only FLSA and wage and hour claims, submitted to the Court for approval herein; and a second agreement containing resolution of non-FLSA claims of discrimination, retaliation, and other matters described below. This practice of bifurcating a settlement agreement and only subjecting FLSA claims to a fairness review is routinely approved, and the Second Circuit has impliedly blessed this procedure as permissible under *Cheeks*. *See Fisher v. SD Prot. Inc.*, 948 F.3d 593, 607 n.12 (2d Cir. 2020) (citing *Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018)) (declining to comment on private agreement in context of bifurcated submission, while recognizing that many courts in this district have permit bifurcated settlements); *Luna v. J.S. Held LLC*, 2023 WL 2214012, at *3–4 (E.D.N.Y. Feb. 24, 2023) (collecting cases).

## I.     RELEVANT FACTUAL AND PROCEDURAL HISTORY

### A.     *The Relevant Parties and Non-Parties*

Defendant Signature Cleaning Services, Inc. ("Signature") operates a New York-based commercial cleaning company that offers a wide range of routine and specialized cleaning and maintenance services for small, medium, and large businesses. Defendant Andrew Weisbach ("Weisbach") is Defendant Signature's founder and current President. Defendant American Maintenance 3 Janitorial Services and Supplies Co. Corp ("American") is a Bronx-based Minority-Owned Business that contracts Signature as a subcontractor to perform cleaning and maintenance services when necessary.

Defendants employed Plaintiffs as cleaners, porters, managers, and other various titles - - some of whom worked for Signature over the course of more than two decades. Of the Plaintiffs listed in the caption in this Action, fifteen total Plaintiffs bring claims under the FLSA (hereinafter, "FLSA Plaintiffs"), while the remaining non-FLSA Plaintiffs assert claims that either exclusively arise under the NYLL, arise under the NYLL and an anti-discrimination or retaliation statute, or strictly assert discrimination/retaliation claims.

In addition to the Parties named in this action, Plaintiff Jorge Tigua is also affiliated with a separate cleaning company, Tristate American Cleaning Services Corp. ("Tristate"). As discussed more fully below, Signature filed a lawsuit against Tristate in New York County.

### B.     *Factual Background and FLSA Allegations*

Plaintiffs filed this action on May 16, 2022. A summary of each FLSA Plaintiffs' dates of employment, title, and claims asserted in this action is attached hereto as **Exhibit B**. In this action, Plaintiffs assert various claims under federal, state, and New York City law. This motion exclusively addresses FLSA Plaintiffs' claims for relief under the FLSA, as only those claims are subject to *Cheeks* review.

Plaintiffs' FLSA claims arise out of several alleged timekeeping and wage and hour violations:

1. **Shaving Time off Weekly Paychecks:** Plaintiffs allege that Defendants systematically altered Plaintiffs' time records to shave three (3) to five (5) work hours off of their weekly paychecks, including by implementing an auto-deduct break policy.

2. **Requiring Off-The-Clock Work:** Plaintiffs allege that Defendants routinely required Plaintiffs to perform off-the clock work for several jobs based on service contracts Defendants executed with its clients that limited the number of hours Defendants were permitted to staff at those locations.

3. **Requiring Split-Checks When Working Over 40 Hours**: Plaintiffs allege that Defendants often required employees who were working more than 40 hours in a

    week to report their hours across multiple checks. This was done sometimes with employees who had different family members all working for signature, whereby Defendants forced an overtime-working employee to report extra hours onto the check of a family member who was part time or who worked fewer than 40 hours to avoid paying overtime.

4. **Failing to Compensate for Travel Time:** Plaintiffs allege that Defendants failed to pay Plaintiffs for time spent traveling between their assigned jobsites throughout the workday for any Plaintiffs who worked in more than one location in a single workday.

5. **Misclassification of Employees**: Plaintiffs allege that Defendants knowingly misclassified Plaintiff Lemuel Morales, Daniel Lara, Jorge Tigua, and Nelson Hernandez as "Managers" and systematically failed to pay them overtime wages at a rate of one-and-one-half times their regular rate of pay for hours worked in excess of forty (40) hours per work week, despite the fact they lacked any meaningful managerial responsibilities or authority, and that their primary job duties were at all times to perform the same cleaning and maintenance work as the other hourly Plaintiffs.

    A.    **Relevant Procedural History**

        *i.*    *The Instant Dispute & The First Mediation*

Plaintiffs commenced their claims asserted herein long before filing their Summons and Complaint in this Court. They first asserted their claims pre-litigation by sending a draft complaint to Defendants' counsel on or around November 18, 2021. The parties, through counsel, conducted extensive discussions, exchanged certain documents and information, and scheduled a mediation which was held on May 3, 2022, through JAMS, before Stephen Sonnenberg, Esq. The matter remained unresolved after the First Mediation, leading to this action and several other matters filed thereafter.

        *ii.*    *The Parties file various actions against each other*

Following the unsuccessful first mediation, Plaintiffs commenced this action. Also following the mediation, Defendants prepared their own actions against some of the Plaintiffs who brought the instant action, and non-party Tristate. *See* **Exhibit C-1**, Tristate Lawsuit Complaint, **Exhibit C-2**, Signature AAA Statement of Claim.

Defendants Signature and Weisbach's action against Tristate accused Tristate and Plaintiff Tigua of stealing Signature's customer list to profit off of Signature's business. It also accused Tristate of assigning some of Signature's employees to perform Tristate work while simultaneously working for Signature, operating as alleged faithless servants while still employed with Signature.

In a separately filed arbitration before the American Arbitration Association ("AAA"), Defendants Signature and Weisbach accused Plaintiffs Jorge Tigua, Nelson Hernandez, Lemuel Morales, Karina Garcia Rivadeneira, Jefferson Rivadeneira, Maria Darquea Intriago, and Jacinta Andrade, of operating as faithless servants during their employment with Signature - - either by simultaneously performing work for non-party Tristate while on the clock as Signature employees, or by clocking in to work for Signature without ever performing any actual job tasks, or by fraudulently cashing checks made out to non-existent "ghost" employees for these Plaintiffs' own benefit.

As a fourth and final filing action relating to the instant case, on or about March 2, 2022, Defendant Signature commenced another action - - in the New York County State Court - - against three separate insurance carriers concerning an apparent insurance coverage dispute arising out of the claims asserted in this Action. *See Signature Cleaning Services, Inc. v. Federal Insurance Company et al.*, No. 650985/22. On or about April 15, 2022, the case was subsequently removed to the Southern District of New York. *See Signature Cleaning Services, Inc. v. Federal Insurance Company et al.*, Dkt. No. 1:22-cv-03122-OTW.

### iii.     *Procedural history in this action and the various other related litigation*

After Plaintiffs filed their Complaint here, Defendants American and Signature separately filed pre-motion conference letters, seeking to file a motion to dismiss and a motion to compel arbitration, respectively. *See* Dkt. Nos. 21 & 22. Plaintiffs opposed both pre-motion letters.

On December 15, 2022, the Parties agreed to stay motion practice and pursue a potential global resolution of *all* matters. While doing so, however, the AAA arbitration continued. In the AAA arbitration, the parties exchanged thousands of pages of documents and electronically stored information. The Parties also engaged in substantive discovery and prepared to file motions in advance of a final week-long hearing on the merits.

### iv.     *The second mediation and the instant FLSA settlement*

Mediation was held on April 26, 2023 with the National Arbitration and Mediation (NAM) before the Honorable Peter B. Skelos (Ret.), at which time the Parties reached a tentative agreement in principle to resolve the matter, but left several material terms to be resolved. The Parties agreed to submit those disputes for an expedited arbitration, including to have the arbitrator review the fairness of the settlement of Plaintiffs' FLSA claims under *Cheeks*. On July 17, 2023, the Parties filed a joint stipulation requesting that the Court close this action to permit them to resolve the claims and seek approval through Arbitration. Dkt. No. 38.

While awaiting the Court's ruling on the July 17th stipulation, the Parties prepared a single, comprehensive global settlement for submission to the Arbitrator. The agreement contained complete resolution of *all* claims in *all* actions described above, including: both the FLSA Plaintiffs' FLSA claims herein, the non-FLSA Plaintiffs' non-FLSA claims; non-Party and Plaintiff Tigua's action as a defendant in the *Tristate* litigation; the claims against several of the Plaintiffs herein (as Respondents) in Signature's AAA Arbitration; and the resolution of

Signature's dispute with its insurance carriers. The Parties submitted their single unified global settlement agreement to the Arbitrator to review the fairness of the resolution of Plaintiffs' FLSA claims. The Arbitrator approved the settlement as fair and reasonable.

The Court, however, declined to So-Order the Parties' stipulation requesting dismissal of this action, instead ordering the Parties to submit their settlement to the Court for *Cheeks* approval. As a result, the Parties amended and bifurcated their original unified settlement agreement into two separate agreements: one that they attach hereto, containing resolution of all wage and hour claims under the FLSA and NYLL, submitted to the Court for approval under *Cheeks*; and the other, a confidential agreement containing resolution of all *non-wage and hour claims*.

## II.    SETTLEMENT TERMS FOR SETTLEMENT OF FLSA CLAIMS

Again, the Fifteen FLSA Plaintiffs alleged claims under the FLSA. The other ten Plaintiffs only asserted non-FLSA claims under either NYLL, or claims alleging discrimination and/or retaliation. The resolution of the wage and hour FLSA claims resulted in the instant FLSA Settlement of $159,121.63 ("Settlement Sum"). The Settlement Sum will be distributed to the FLSA Plaintiffs as follows:

- FLSA Plaintiffs: $95,896.08 split *pro rata* across the FLSA Plaintiffs based on their alleged actual damages under the FLSA's three-year limitations period.

- Joseph & Norinsberg, LLC: $63,225.54 (comprised of $53,040.54 in attorneys' fees which is $1/3^{rd}$ of the total Settlement Sum, and $10,185.00 in litigation expenses, representing the FLSA Plaintiffs' pro-rata share of all litigation costs).

The Settlement Sum will be paid via one single lump sum within thirty days of the Plaintiffs' execution of the FLSA Agreement, or within fifteen days of the Court's order approving this settlement as fair and reasonable - - whichever is later. A summary reflecting each FLSA Plaintiff's individual gross and net share of the Settlement Sum - - both before and after reduction for attorneys' fees and costs - - is attached hereto as **Exhibit D**.

For the reasons described below, FLSA Plaintiffs, on behalf of all Parties, respectfully submit that this amount and allocation is fair and reasonable under the circumstances and requests that the Court approves the settlement.

## III.   THE FLSA SETTLEMENT AGREEMENT IS FAIR AND REASONABLE.

FLSA claims may only be settled and dismissed with prejudice under Rule 41 if they are approved by the Court. *Cheeks*, 796 F.3d at 206-07. "Courts approve FLSA settlements when they

are reached as a result of contested litigation to resolve bona fide disputes." *Kochilas v. Nat'l Merch. Servs., Inc.*, 2015 WL 5821631, at *7 (E.D.N.Y. Oct. 2, 2015) (citation omitted). "Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of settlement." *Id*. (citation omitted). Furthermore, "[i]f the proposed settlement reflects a reasonable compromise over contested issues, the settlement should be approved." *Id*. (citation omitted). In evaluating the fairness of a proposed settlement of FLSA claims, most courts in this Circuit apply the five-factor test articulated in *Wolinsky v. Scholastic, Inc.*, 900 F. Supp. 2d 332, 335-36 (S.D.N.Y. 2012). The *Wolinsky* factors consider: (a) the plaintiff's range of possible recovery; (b) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (c) the seriousness of the litigation risks faced by the parties; (d) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (e) the possibility of fraud or collusion. *See Gonzalez v. Lovin Oven Catering of Suffolk, LLC*, 2015 WL 6550560, at *2 (E.D.N.Y. Oct. 28, 2015) (applying *Wolinsky* factors on a *Cheeks* approval motion). The Parties submit that their settlement of Plaintiff's FLSA claims is fair and reasonable based on an analysis of the *Wolinsky* factors.

      A.      <u>**Range of Possible Recovery**</u>

Plaintiffs worked for Defendants in various capacities for various tenures - - some as short as a few weeks during the FLSA limitations period, and others for many years. Four of the FLSA Plaintiffs - - Lara, Morales, Hernandez, and Tigua - - alleged that Defendants misclassified them and did not pay them any overtime. The remaining eleven FLSA Plaintiffs all alleged that Defendants underpaid them through the various schemes set forth above in Section I.B.1-4, *supra*.

Defendants vigorously disputed Plaintiffs' claims. Specifically, Defendants denied that Plaintiffs were underpaid for any work, and in fact alleged that many of the FLSA Plaintiffs were vastly overpaid based on Defendants' allegation that many of the FLSA Plaintiffs either clocked in without working at all, or operated as faithless servants by working for Signature's competitor, Tristate, while clocked-in to work for Signature, or by "clocking in" as non-existent or "ghost" employees in addition to themselves, to essentially receive double wages for their working time. Indeed, Defendants contend that through the deposition testimony of Plaintiffs Lemuel Morales and Jorge Tigua during the Tristate litigation, Defendants submit that they obtained admissions that the supervisors properly classified as a salaried, exempt managers and, as a result, the four supervisors (L. Morales, Lara, Hernandez, Tigua) would not be entitled to any unpaid wages (including overtime) in this action.

Moreover, Defendants alleged that the manager FLSA Plaintiffs - - Morales, Lara, Hernandez, and Tigua - - were the principle perpetrators of this alleged "ghost" employee practice described above and prosecuted in the Signature's AAA Arbitration, meaning that if any FLSA

Plaintiffs were genuinely underpaid, it would be these four FLSA Plaintiffs who were liable as potential "employers" - - not Defendants - - because Defendants claimed they lacked knowledge of any alleged unpaid work due to the four manager FLSA Plaintiffs' alleged attempt to conceal their own wrongdoing.

As a result, Defendants claim that they had a complete defense to any liability (i.e., unpaid wages) to the four supervisors (Morales, Lara, Hernandez, and Tigua), which represent the majority of any alleged unpaid wages owed to Plaintiffs with FLSA claims. Furthermore, to the extent Defendants were potentially liable for any unpaid overtime compensation, Defendants contend that they could, at an absolute minimum, withstand liability for liquidated damages based on the alleged faithlessness/fraud of some of the FLSA Plaintiffs. For the same reasons, Defendants argued that any violations would be far from "willful," thereby reducing Plaintiff's recoverable statute of limitations to two years, not three, under the FLSA.

Plaintiffs calculated their reasonable range of recovery based on four scenarios: (1) actual and liquidated damages based on a full three-year FLSA limitations period for willfulness; (2) actual damages - - but no liquidated damages - - also based on a three-year limitations period; (3) actual and liquidated damages based on a two-year limitations period; and (4) actual damages only (without liquidated damages) for a two-year limitations period. Each FLSA Plaintiff's range of recovery under these four scenarios is contained in the spreadsheet exhibit attached hereto as **Exhibit E**.

To summarize **Exhibit E**'s data, a reasonable range of recovery in this matter would be as follows:

- *Three years, with liquidated damages*: between zero and $431,337.93;
- *Three years, with actual damages only*: between zero and $215,668.97;
- *Two years, with liquidated damages*: between zero and $260,054.68;
- *Two years, with actual damages only*: between zero and $130,027.34.

Each of these figures could also possibly be a negative number or *loss* to Plaintiffs if Defendants prevailed on their faithless servant / fraud claims, as alleged in the separate Arbitration and *TriState* litigation. Defendants calculated their early damages to be over One Million Dollars.

Under this proposed settlement, ***after*** deducting for attorneys' fees and costs, FLSA Plaintiffs will receive $95,896.08. This represents the following approximate *average* percentage recovery for all FLSA Plaintiffs under the above four scenarios:[2]

---

[2] For the four FLSA Plaintiffs who allege manager misclassification - - Lara, Morales, Tigua, and Hernandez - - we discounted their potential recovery by 50% when distributing their pro-rata share of the total Settlement Sum. We did this considering their heightened risk of success on the merits when compared to the other hourly, "non-manager"

- *Three years, with liquidated damages*: 24.25%;
- *Three years, with actual damages only*: 48.50%
- *Two years, with liquidated damages*: 69.23%
- *Two years, with actual damages only*: 105.13%

Considering the overlapping complexities of several actions, including a potential of disgorgement of Plaintiffs' wages and damages claimed by Signature against several Plaintiffs, the outcome here is a highly reasonable one under the FLSA. *See, e.g., Gervacio v. ARJ Laundry Servs. Inc.*, 2019 WL 330631, at *1 (S.D.N.Y. Jan. 25, 2019) (finding twenty percent of maximum recovery reasonable in light of circumstances); *Villanueva v. 179 Third Avenue Rest Inc.*, 2018 WL 4100479, at *2 (S.D.N.Y. Aug. 28, 2018) (finding "less than six percent of estimated maximum recovery" to be reasonable in light of the circumstances).

### B.     *Avoiding Burdens and Potential Risks of Continued Litigation*

Regarding the second and third *Wolinsky* factors, if the Parties failed to reach a settlement, this matter was in its infancy, with substantive motion practice to commence, and with a very real risk that Plaintiffs would be forced to arbitrate their claims in a less favorable forum than before this Court. Moreover, the other arbitration and litigations all required substantial time, resources, and expense, with Plaintiffs only serving to risk damages awarded *against them* in those actions if they were not resolved. Plaintiffs were facing a demand of over One Million Dollars. Without question, disputed issues of material fact would arise concerning Plaintiffs' hours worked, Plaintiffs' job duties, and whether Defendants' position regarding its allegations of fraud and faithlessness would bear out. This case therefore represents a uniquely and exceedingly complex case, departing from typical wage and hour matters, given the competing overlapping actions across four different forums. Discovery across these actions had already commenced, and was already proving to be expensive and time consuming, with that time and expense increasing exponentially if the Parties were not able to resolve the claims herein as they did at and after the second mediation. Risks would only increase as more time, effort, and resources were poured into the action. Indeed, courts have recognized that discovery, continued litigation, and eventual trial practice may "meaningfully decrease possible recovery for Plaintiff[s]." *Flores v. Mama Lombardi's of Holbrook, Inc*., 2015 WL 2374515, at *5 (E.D.N.Y. May 18, 2015). With litigation risks expected to immediately rise for all Parties, the Settlement Sum is especially fair and reasonable.

---

FLSA Plaintiffs, to ensure a fair and equitable distribution of the total Settlement Sum given this added issue of law and fact attributable only to these four "manager" FLSA Plaintiffs.

### C.   *Arm's-Length Bargaining, No Fraud or Collusion, No Cheeks Admonishments*

As to whether the settlement is the product of arm's-length bargaining and is a reasonable, non-collusive resolution of the case, the settlement negotiations took place over nearly two years, including prior to Plaintiffs filing this action, and concluded only after extensive negotiations and after the Parties and non-parties conducted two mediations. The assistance of an experienced employment law mediator reinforces that a settlement agreement is non-collusive. *E.g., Hernandez v. Anjost Corp.*, 2013 WL 4145952, at *2 (S.D.N.Y. Aug. 14, 2013) ("A settlement like this one, reached with the help of a third-party neutral, enjoys a "presumption that the settlement achieved meets the requirements of due process."); *Capsolas v. Pasta Res. Inc.*, 2012 WL 1656920, at *1 (S.D.N.Y. May 9, 2012) (same). There was no fraud or collusion here.

Regarding the release, the Parties' FLSA Agreement contains no terms or conditions that are prohibited under *Cheeks* and its progeny. *See Ezpino v. CDL Underground Specialists, Inc.*, 2017 WL 3037483, at *3 (E.D.N.Y. June 30, 2017) (citing *Cheeks*, 796 F.3d at 206). Likewise, the Agreement does not contain a confidentiality or non-disparagement clause that may "run afoul of the purposes of the FLSA and the public's independent interest in assuring that employees' wages are fair." *Flood v. Carlson Rests., Inc.*, 2015 WL 4111668, at *1 (S.D.N.Y. July 6, 2015) (citing *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 177-78 (S.D.N.Y. Mar. 30, 2015)); *also compare Ezpino*, 2017 WL 3037483, at *2-3 (citing *Cheeks*, 796 F.3d at 206) (approving settlement agreement where it did not "contain a confidentiality provision nor does it contain a non-disparagement clause"); with *Gonzalez v. Lovin Oven Catering of Suffolk, Inc.*, 2015 WL 6550560, at *3 (E.D.N.Y. Oct. 28, 2015) (citing Cheeks, 796 F.3d at 206) (declining to approve FLSA settlement containing a confidentiality provision).

As described above, the Parties have resolved *all* claims at issue in *all* actions and arbitrations - - not just the FLSA Plaintiffs' FLSA claims. In so doing, the Parties have proceeded by bifurcating their settlement into both a *Cheeks*-specific agreement and a non-FLSA agreement not subject to review. Courts in this Circuit regularly accept bifurcated settlement agreements where the parties' FLSA claims undergo a *Cheeks* review while their non-FLSA claims are resolved by a separate private agreement.[3] *Luna v. J.S. Held LLC*, 2023 WL 2214012, at *3–4 (E.D.N.Y. Feb. 24, 2023) (collecting cases); *Gallardo v. PS Chicken Inc.*, 285 F. Supp. 3d 549, 553 (E.D.N.Y. 2018) (finding that the "mechanism" of a bifurcated settlement of FLSA and non-

---

[3] Moreover, while not subject to review, the Parties represent to the Court that their separate agreement resolving their non-FLSA / non-wage and hour claims does not infringe on Plaintiffs' rights under the instant FLSA Settlement, and does not curtail any rights protected by *Cheeks* for the resolution of FLSA claims. All releases contained in the non-FLSA agreement are "mutual in all respects so as to enable the parties to walk[] away from their relationship . . . without the potential for any further disputes." *Souza v. 65 St. Marks Bistro*, 2015 WL 7271747, at *5-7 (S.D.N.Y. Nov. 6, 2015); *see also, e.g., Lola v. Skadden, Arps, Meagher, Slate & Flom LLP*, 206 WL 922223, at *2 (S.D.N.Y. Feb. 3, 2016) (citing *Souza* and permitting general mutual release). This is appropriate in circumstances where a plaintiff brings claims other than wage and hour claims. *E.g., Acosta v. Prudent Mgmt., LLC*, 2012 WL 391332, at *3-4 (S.D.N.Y. Feb. 4, 2021).

FLSA claims "does not run afoul of *Cheeks*"); *Yunda v. SAFI-G, Inc.*, 2017 WL 1608898, at *2 (S.D.N.Y. April 28, 2017); *Chowdhury v. Brioni Am., Inc.*, No. 16 CIV. 344 (HBP), 2017 WL 5953171, at *5 (S.D.N.Y. Nov. 29, 2017) ("Judges in this District routinely approve bifurcated settlement agreement[s] ...") (quotes omitted). Bifurcated settlements are especially appropriate where, as is here, the private, non-FLSA settlement agreement concerns state law claims of discrimination and retaliation, and matters not before the Court that lack federal jurisdiction. *See e.g.*, *Pavone v. Diesel U.S.A., Inc.*, No. 21 CIV. 5219 (PAE), 2022 WL 1177344, at *2 (S.D.N.Y. Mar. 2, 2022) ("The Court further finds that the separate settlement of [Plaintiff's] state law discrimination claims does not [require] judicial approval"); *Chowdhury*, 2017 WL 5953171, at *5 ("Plaintiffs' discrimination claims, unlike their FLSA claims, do not require judicial approval"); *Doe v. Solera Cap. LLC*, No. 18 CIV. 1769 (ER), 2021 WL 1725734, at *1 (S.D.N.Y. Mar. 3, 2021) (approving bifurcated settlement, one resolving wage and hour claims and the other resolving claims for discrimination, hostile work environment and retaliation).

In addition to the bifurcation of settlement agreements, there is a growing trend by district courts around the country to forego judicial approval for single plaintiff or non-collective FLSA settlements, such as this present case. *Evans v. Centurion Managed Care of Arizona LLC*, No. CV-23-00282 (PHX)(DWL), 2023 WL 5095201, at *1 (D. Ariz. Aug. 9, 2023) ("although the Court has previously engaged in the process of approving settlements in individual FLSA actions, it now joins the growing number of courts that have concluded that judicial approval is neither authorized nor necessary in this circumstance."); *Askew v. Inter-Cont. Hotels Corp.*, 620 F.Supp 3d 635, 643 (W.D. Ky. 2022) (holding that the FLSA is not an "applicable federal statute" under Rule 41(a)(1)(A) that prevents dismissal at the parties' request); *Alcantara v. Duran Landscaping, Inc.*, No. 2:21-CV-03947 (JDW,) 2022 WL 2703610, at *3 (E.D. Pa. July 12, 2022) (the text of Rule 41 does not support judicial approval of FLSA settlements "at least if the case is not a collective action"). In *Smith v. Bridgeway LLC*, the district court approved a joint stipulation of dismissal per FRCP 41(a)(1)(A)(ii) for a FLSA case because "this action does not purport to settle a claim on behalf of a collective." *Smith v. Bridgeway LLC*, 2023 U.S. Dist. LEXIS 136277 (E.D. Ark. Aug. 7, 2023).

### D.     *The Requested Attorneys' Fees are Reasonable*

In addition to assessing the reasonableness of the settlement amount, most courts since *Cheeks* have found that courts "must also assess the reasonableness of any attorneys' fee award." *Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 585 (S.D.N.Y. Oct. 7, 2015) (citing *Wolinsky*, 900 F. Supp. 2d at 336). When courts examine attorneys' fee awards in Rule 41 FLSA settlements, it is "to ensure that the interest of Plaintiffs' counsel in counsel's own compensation [did not] adversely affect the extent of the relief counsel [procured] for the clients." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 366 (S.D.N.Y. 2013) (citing *Wolinsky*, 900 F. Supp. 2d at 336).

Here, the portion of the settlement amount attributable to attorneys' fees is $53,040.54, which amounts to exactly 1/3 of the total gross Settlement Sum. This is consistent with what courts in this Circuit routinely approve, thereby demonstrating its reasonableness. *See Fresno County Employees' Retirement Assoc. v. Isaacson/Weaver Family Trust*, 925 F.3d 63, 71 (2d Cir. 2019) (quoting *McDaniel v. Cty. of Schenectady*, 595 F.3d 411, 419 (2d Cir. 2010)) ("[W]e have previously noted that 'the percentage method has the advantage of aligning the interests of Plaintiff and their attorneys more fully'"); *see also Kornell v. Haverhill Ret. Sys.*, 790 Fed. App'x 296, 298 (2d Cir. 2019) (approving attorneys' fees award of one-third the gross settlement sum - - not one-third the net settlement sum after deduction of attorneys' fees - - and finding that trial court decision to grant same was permissible as long as "its award of attorneys' fees is reasonable."); *Calle v. Elite Specialty Coatings Plus, Inc.*, 2014 WL 6621081, at *3 (E.D.N.Y. Nov. 21, 2014) ("A one-third contingency fee is a commonly accepted fee in this Circuit."); *Thornhill v. CVS Pharmacy, Inc.*, 2014 WL 1100135, at *3 (S.D.N.Y. Mar. 20, 2014) (collecting cases setting attorneys' fees at one-third of the settlement).

Moreover, the reasonableness of Plaintiffs' counsel's requested fee is further solidified by "[a]pplying the lodestar method as a cross check." *See Fresno County Employees' Retirement Assoc.*, 925 F.3d at 72 (citing *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000)) ("district courts should use the lodestar as a 'baseline' against which to cross-check a percentage fee"). In order to calculate the lodestar check, the Firm multiplied the attorney and paralegal hours spent on the case by each individual's reasonable hourly rate. *See Healey v. Leavitt*, 485 F.3d 63, 71 (2d Cir. 2007). Between the time that Plaintiffs first retained counsel and August 24, 2023 while finalizing this motion, Plaintiffs' counsel has billed over 439 hours on this file, for a total lodestar fee of $102,387.50, if calculated pursuant to the lodestar, a figure well below the $53,040.54 fees figure sought herein.[4] This is well within the range of reasonableness that courts routinely approve. *E.g. Suarez v. Rosa Mexicano Brands Inc.*, 2018 WL 1801319, at *1-*2 (S.D.N.Y. Apr. 13, 2018) (awarding 33.33% attorneys' fee of $1,200,000.00 in a $3,600,00.00 settlement, amounting to a 4.62 multiplier, in a claims-made, reversionary settlement for restaurant workers); *Bravo v. Palm West Corp.*, No. 14-cv-9193, Dkt. 62 (S.D.N.Y. Mar. 11, 2016) (awarding $500,000.00 fee, representing 3.5 multiplier in FLSA / NYLL class action); *Fleisher v. Phoenix Life Ins. Co.*, 2015 WL 10847814, at *18 (S.D.N.Y. Sept. 9, 2015) (awarding multiplier of 4.87); *Capsolas v. Pasta Res., Inc.*, 2012 WL 4760910, at *9 (S.D.N.Y. Oct. 5, 2012) (awarding multiplier of 3.96). This figure is based on hourly rates of: $450.00 per hour for Jon L. Norinsberg, Esq., and Bennitta L. Joseph, Esq.,

---

[4] It is settled that pre-litigation work is compensable time because "some of the services performed before a lawsuit is formally commenced are performed 'on the litigation' . . . [when such charged time] falls under the category of developing a theory of the case." *See, e.g., Alvarez v. Haywood*, 2011 WL 13130851, at *8 (N.D.N.Y. Aug. 29, 2011) (quoting *Webb v. Bd. of Educ. of Dyer Cnty., Tenn.*, 471 U.S. 234, 243 (1985)) (awarding attorneys' fees for pre-litigation work spent "drafting memoranda regarding whether Plaintiff's counsel's firm should take Plaintiff's case, and [ ] for Plaintiff's counsel's assistance during Plaintiff's labor arbitration."). Plaintiffs' counsel's pre-litigation, and related litigation work, is described in detail above and in the attached billing records.

Plaintiffs' counsel's firm's managing partners who supervised all work in this case; $350.00 per hour for Michael R. Minkoff, Esq., undersigned counsel and partner on this matter, and co-lead counsel; $290.00 per hour for Diego O. Barros, Esq., Senior Counsel and co-lead counsel along with the undersigned; and $100.00 per hour for paralegals. Courts routinely approve these rates in similar cases. *See, e.g., Gomez v. Vintage Ventures, LLC*, Dkt .No. 1:22-cv-03202-RML, Order Granting ECF # 22 (E.D.N.Y. Jan. 26, 2023); *Navarro v. Adamba Imports Int'l, Inc.*, Dkt. No. 1:21-cv-06342-RLM, ECF # 34 (E.D.N.Y. Jan. 3, 2023) (minute entry approving settlement agreement and requested attorneys' fees); *Lux v. 292 Broadway Fish Corp.*, Dkt. No. 1:21-cv-02847-VMS, Nov. 16, 2022 Unnumbered Order Approving Settlement (E.D.N.Y. Nov. 16, 2022) (approving rates of $450.00 per hour for Jon L. Norinsberg and $275.00 per hour for Diego O. Barros); *Carvajal v. Bestcare, Inc.,* Dkt. No. 2:20-cv-01791-JS-ST, ECF # 38 (E.D.N.Y. Feb. 10, 2022) (approving *Cheeks* motion and specifically approving same rates requested here by undersigned counsel); *Martinez v. Sinai Manufacturing Corp.*, Dkt. No. ESX-L-000389-20 (Super. Ct. N.J. Essex Cnty. Sept. 10, 2021) (approving rate of $400.00 per hour for Diego Barros in unopposed class action settlement approval order); *Quinones v. UMVLT, LLC*, Dkt. No. 1:21-cv-00184-JLC, ECF # 29 (S.D.N.Y. July 26, 2021) (in single-plaintiff FLSA matter wherein undersigned counsel was lead attorney, expressly noting allocation of attorneys' fees based on rates comparable to those sought here was "fair and reasonable under the totality of circumstances"); *Delyons v. KA Investigations-Security, LLC*, Dkt. No. 1:20-cv-01763-LB, ECF # 35 (E.D.N.Y. May 20, 2021) (Bloom, *M.J.*) (in matter handled by undersigned counsel as lead attorney, evaluating fairness of FLSA settlement under *Cheeks* and specifically approving fee award based on rates comparable to those requested here); *Abraham v. Promise Home Care, Inc.*, Dkt. No. 1:18-cv-04502-GWG, ECF # 134 (S.D.N.Y. Dec. 1, 2020) (in FLSA/NYLL class action handled by undersigned counsel as lead attorney, approving fees award at 2.37 times lodestar multiplier based on hourly rates comparable to those requested herein); *Patterson v. Premier Construction Co. Inc.*, Dkt. No.: 15-cv-00662-ST (S.D.N.Y. 2017); *Stinson v. City of New York*, 282 F.R.D. 360 (S.D.N.Y. 2012); *Marshall v. City of New York, et al.*, 10-cv-2714 (JBW) (VVP) (E.D.N.Y. 2012). *See also Tokareva v. Sec. Serv. Provider Corp.*, 2021 WL 1093877, at *2 (S.D.N.Y. Feb. 16, 2021) (noting hourly rates between $250 and $450 is "appropriate for experienced litigators in wage-and-hour cases" and noting hourly rates between $100 and $150 for paralegal work "found to be reasonable"). Plaintiffs' counsel's contemporaneous billing records are attached hereto as **Exhibit F**.

Finally, Plaintiffs' counsel seeks reimbursement for its out-of-pocket litigation expenses in the amount of $10,185.00. This includes the costs of both mediations, the initial filing fee in this matter, legal research and investigation costs, service of process, and costs related to e-discovery. A log of all expenses, along with receipts for these expenses, is attached hereto as **Exhibit G**.[5]

---

[5] Plaintiffs note that their total litigation costs in this matter amount to $16,949.96. However, through this motion, FLSA Plaintiffs only seek approval of reimbursement for the costs specifically attributable to the instant fifteen FLSA Plaintiffs.

Accordingly, Plaintiffs' counsel's request for a total of $63,225.54 is reasonable.

## IV.   **CONCLUSION**

For the forgoing reasons, Plaintiffs, on behalf of the Parties, respectfully requests that the Court approve the settlement of Plaintiffs' FLSA Claims on the terms set forth in the Agreement and described herein, dismiss this matter with prejudice, and that the Court retain jurisdiction to enforce the terms of the Parties' Agreement.  The Parties have attached hereto as **Exhibit H** a proposed order of dismissal for the Court's convenience.

We thank the Court for its time and attention to this matter.

Respectfully submitted,

_____
Michael R. Minkoff, Esq.


Copies to:       Counsel for Defendants (via ECF)